The first case of the afternoon is 413-0926 in re Marriage of Patrick Lynch and Karen Lynch for the appellant Ms. Martinez and for the appellate Ms. Cagle. You may proceed. Thank you. Good afternoon judges. May it please the court and counsel. Judge, my client is Karen Lynch and she suffered an injustice when the trial court ordered that husband receive 100% of the marital residence or 100% of the assets. In that case there were two assets. One was a pension of which the marital proportion was approximately $1,200, $1,100 around there. And then there was also an annuity that was accumulated during the marriage. The retirement had a component that was marital and non-marital. The husband was awarded the annuity in the approximate amount of $36,000. That was because he assumed debt in that approximate amount. We're not disputing the fact that he should not have been awarded that annuity. It was contemplated when he assumed the majority of the debt. But the real issue in this case, well there's two. The first being should the trial court have used the total offset approach when valuing or when distributing the pension. Or should the court have used the Wisniewski formula as articulated by this court in remarriage of Wisniewski. The two types of methodologies used to value a pension. The first being the total offset approach. And in that context you need to know the value, present value of the marital residence or of the retirement. You also need to have sufficient assets from which to offset the property. In this case there were no sufficient assets. And the trial court placed no value on the benefit amount, on the marital portion of the benefit. There was no actuarial evidence. There was no discount rate determined. And so this court could not determine whether or not there was an equitable distribution of property simply because there was no value placed on the property. So the trial court, if this court finds that the trial court should use the total offset method, then the court should remand the case back and have actuarial evidence as to the value of that pension. And when I found out the trial court used the total offset amount, I filed a motion to reconsider and gave the trial court an opportunity to reopen the evidence to determine the value of the pension in determining what distribution of property should have been. In this case, the court should remand the case back to the trial court and order the trial court to use the Wisniewski formula in determining the marital portion. So are you, in essence, then asking this court to grant your client relief in the form of $575.91 per month as per share of Patrick's pension? I am, or alternatively, if the court does not believe it has sufficient evidence upon which to determine whether or not there would be an equitable distribution by doing a 50-50 split, then I'm asking the court to remand it back to the trial court to use the Wisniewski formula to determine then actually what portion my client should have received. The trial court had very well used the Wisniewski formula and found that maybe my client should only be entitled to 25% of the retirement. But what you can see, it would be no more than the, what was it, 54% or 52%? 52%, yes. Which would be the $500? Absolutely, Judge. Okay, thank you. Absolutely, that would be the portion that my client would receive. And that's the one thing I'm asking, or alternatively, I'm asking that the court, the appellate court, tell the trial court that if, in fact, it needs to use the Wisniewski formula and if not, then it needs to determine the present value of the pension. And I think in the Wisniewski case, basically that's what you alluded to, where this court held that it must take the value of the pension determined by actual evidence, discount this amount to an extent in consideration the probability will not rest, then discount it to the present value, and then determine the marital portion of that amount. And Wisniewski, which I cited in my brief, it also went on to say that this offset method should only be used when the value is known and when there are sufficient marital assets from which to offset, which we don't have here. Maybe without regard to the labels applied to it, I'm not sure that I would say that Judge Pacey used any formula at all. It just seems to me that he thought, well, the marital estate paid off your, or paid a lot toward your mortgage, wife, so the husband ought to get all of his pension. I mean, it seems sort of a rough, his effort is some sort of a rough equity without taking into account values or time or anything else. Well, I think you could certainly take that position, Judge, and if that's the position the court's taking, then it should be reined back to determine... Right. I'm not trying to trick you by saying that. I'm conceding anything. I agree. I agree with you, Judge, on that part of it. And what I tried to do when I filed the motion to reconsider was give him the opportunity to determine the value. And then this court could determine whether or not the allocation was proper under Section 503 of the IMDMA. Was the, do we know, we don't know the equity that your client had in the house before. Correct. What we do know is that... Do we need to know that? I think that's one piece of the puzzle, yes. I agree with you, Judge, that should have been determined. Because that definitely would be considered in 503. When I looked at, basically they got married in 91, I believe, and then in 92 they took out, they refinanced the house at that time. Then the house was paid off and then they refinanced it. So, clearly, I agree with your position and you're right. When you look at his analysis, he did basically say what your Honor said and basically just gave him 100% of the marital property. And really, to be honest with you, when you looked at his justification, it was basically a couple sentences, but didn't go through the factors set out in 503. And, again, I know you don't always have to articulate that in your opinion, but I think it's helpful to counsel and to a reviewing court to have that information before it so that court can determine what an actual distribution of property should be. So, my position on that is if the court could order the 50% now, we know the marital portion, or two, it could be manned the trial court to use, to value that pension either through total offset or by using the formula outlined in Wisniewski, which I believe is the appropriate formula to be used because there are no marital assets from which to offset. And that's consistent with this court's position, or case, in in-ring marriage of Wisniewski. The second area where the trial court erred was when it found that the marital estate had not been reimbursed for its contributions, adequately reimbursed for its contributions to the non-marital estate, that being the mortgage principal payments. And in my brief, basically, and once again, we don't know if the property distribution is equitable because the court didn't find any amount that the marital estate was entitled to be reimbursed. My position is that it's already been reimbursed by that. Yes, there was $66,000, which the court articulated in its opinion, $66,000 that the marital estate had reimbursed on principal payments, not on interest. And in my brief, I show that that $60,000, you still have to look at the non-marital contribution that my client made to the marital estate, which was refinancing that equity and then using that equity to pay marital debt. So when you look at whether or not the trial court's finding is equitable, you need to look at, number one, they own the marital residence for 20 years, almost 21 years. So they clearly have the use based on that. And if you look at how I averaged over the $36,000, that would have been $150 per month over the 20 years that the marital estate would have paid to the non-marital estate. And secondly, even if the court finds that the marital estate had not been reimbursed, the amount needs to be determined, and my position would be that it's already been reimbursed because the husband has been receiving since he filed the divorce in August of 2012 the entire marital portion of the pension. So my position is, A, it was already reimbursed, but B, if it's not reimbursed, then that amount has already been made up by the husband receiving the entire marital portion from August of 2012 through today. I believe the appellate court should reverse the trial court, either order that the assets be split 50-50, or alternatively remand back to determine the value or whatever, what formula that should be used, which would be Wisniewski, in my opinion, to get a value of that, and then the court can determine what equitable distribution should be of the property. Thank you. Do you have any other questions? I have a question. Sure. In Judge Pacey's August 2, 2013, order in paragraph 12, he references a defined benefit pension plan, and in paragraph 13 he references a defined contributions pension plan slash annuity. Is one of those a mistake, or is paragraph 13 the annuity? Is that what he means? In paragraph 12 is the pension? Your Honor, if you'd give me a moment, I can refer to that. It's on A7 of your brief. A7, okay. Yeah. I take paragraph 12. I just want to make sure, though. Is the pension in paragraph 13, he actually is just referring to the annuity? Let me get it. I'm sorry. Here we go. Okay. In paragraph 6? No, paragraph 12. 12. Of his order or of the judgment? Okay. I don't have the judgment with me. Well, I'll tell you what. Here it is. Dated, the petition retained as a sole and separate property is full interest in defined benefit plan, which is the pension plan that I'm referring to. And then annuity is? Is that what he's referring to? That's my thinking. There was a, okay, so it looks like he's got, there's a joint and survivor annuity, which my client, it's an irrevocable annuity, and so my client is named as the survivor under that annuity. And then there's another annuity that was the $36,000 that I had alluded to, which we don't object being awarded to a husband. Right, I understand. But my only question is, is when he uses the expression  he just means the annuity. Is that correct? That's in paragraph 13. Correct. I think he's just referring to the annuity. So we don't have a defined contribution plan and a defined benefit plan. No, one's the annuity. Okay, that's all I was trying to establish. Thank you, Judge. Thank you, Judge. Thank you. Do we hear from the Honorable? May it please the Court? Counsel? Your Honors, the trial court's ruling as to property distribution, including the element that awards Patrick Lynch his entire defined benefit plan, should be affirmed. It was not an abuse of discretion when you consider the overall context of the property distribution and the financial circumstances of the parties in this case as the trial court was required to consider pursuant to Section 503D of the Illinois Marriage and Dissolution of Marriage Act. First off, Your Honor, just to clarify the last question. Yes, thank you. I drafted the judgment that was signed by Judge Pacey and that I think you're referring to on A7. Right. And the pension plan in this question kind of used some reverse terminology than what we're accustomed to. It referred to what I would call a defined contribution plan as an annuity, even though it had a set value certain of $35,000. And I think that's what Attorney Martinkus was referring to as having been $35,000 in debt that Mr. Lynch assumed. The pension plan, the defined benefit pension plan, is what was referred to in paragraph 12, the monthly $2,133 benefit that Mr. Lynch received. So that is what is referred to in 12, and I think that's what is being asked to be reviewed on appeal as opposed to 13. Right. Okay. Thank you. As an initial matter, Your Honor, the court did make evaluation of the pension. There was not an actuarial evaluation dealing with life expectancies and such. However, this pension had been in pay status since April 1, 2010. The monthly benefit was known. The age of the participant was known. The reduction for the 75% joint and survivor annuity was known. The marital participation months were known, and the total participation months were known. Every element that is required to evaluate this pension or to apply a Hunt-Wisniewski formula was known, presented, and stipulated to absolutely undisputed in front of the trial court. A demonstrative exhibit, C-53 of the record, was presented to the trial court by Mr. Lynch, and it is referred to in Karen's brief on appeal. It specifically sets forth we've got 429 months of total participation, 231 months of marital participation. Fifty-four percent of this pension was marital. Forty-six was non-marital. When applied to the monthly benefit, half of the marital portion using a Hunt-Wisniewski formula would be the 575.91 per month. That is not failing to evaluate a pension. I would refer the court to the case of In re Marriage of Manker, in which this court dealt with two spouses, each of which had a state-defined benefit pension. Husband's pension in that case was in pay status. Wife's was not. The trial court used a reserve jurisdiction approach in that case and basically said we'll wait until both of them hit pay status and then apply Hunt-Wisniewski. On appeal, Justice Myers wrote for a unanimous court that when a pension is pay status, its value is known. Its value is the amount of the monthly benefit. And this court reversed the trial court in that case as to the reserve jurisdiction approach on husband's pension for that very reason. I think the exact language of the case was that this is a known quantity. So why didn't Judge Pacey give her her $575.91 a month? Your Honor, I think the reason is that it wasn't because he didn't evaluate the pension. It's because the percentage that Judge Pacey thought Karen was entitled to was zero. Wisniewski and Hunt does not require a 50% share of the marital portion. What did she get which would lead one to conclude that the amount of the pension she would receive would be zero? I think what she got in this case was essentially the non-marital property of the home, which had a positive equity of $42,000 in change at the time of the divorce, as well as the fact that Judge Pacey considered that this house had been paid off once during the marriage with marital funds to the tune of a $48,000 mortgage and had been paid back down on a second mortgage taken out two years later in an amount of approximately $17,000. That was where Judge Pacey came up with the $65,000 figure that's fairly well accepted in this case as to what the principal reduction on the non-marital residence was. Also, Mr. Lynch took an exorbitant amount of debt in this case, $36,000 worth of debt. The financial affairs affidavits that were submitted to Judge Pacey in this case showed that the minimum monthly payments on the debt he assumed was $1,175 a month. Also, Your Honor, there was some tension between whether a defined benefit pension in pay status is conceptualized as income or assets. I understand that the case law routinely has considered defined benefit pension an asset even in pay status, but I don't think the income and cash flow elements to the divorcing spouse can be ignored. Section 503D tells the trial court to consider the economic circumstances and liabilities and income of the parties once this property distribution takes effect. Well, if you had taken away $575 a month from Patrick's income and added it to Karen's, she is still employed. She would essentially be making more money than Patrick. And then when you took the mandatory debt repayment that Patrick was assuming, as well as his house and car expense after divorce, this type of distribution, had she got 50% of the marital portion, would have put her in a far superior position to Patrick. Even though she was leaving with a non-marital residence, which was the biggest asset by far that the parties owned. I think it is a little difficult to follow or figure out how Judge Pace got to where he ended up. What did you argue to Judge Pace? Your Honor, I argued that he should be able to keep his entire defined contribution plan. What did you argue about the house? As far as the house? As far as the flow of money back and forth. I'm sorry, Your Honor. Your position, whether it is labeled this or not, the concept would be the marital estate made contributions to the non-marital estate. That has to be proven specifically by clear and convincing evidence. What in this record shows those contributions? It can't just be the mortgage and the loans back and forth, because that was used for their lifestyle. If this had been kept completely non-marital, if there had been an ability to have this non-marital or it stayed non-marital and they lived somewhere else, they would have had far more expenses that couldn't have been paid for. They had to borrow from her non-marital property to have the lifestyle that they wanted to have. So he benefited from the non-marital estate, the marital estate benefited from the non-marital estate, and in addition, there was a benefit to him to get to live and for them to enjoy that property for 20 years. Wasn't it 20 years? It was 20 years, Your Honor. In 18 of those years, a mortgage payment was being made through Patrick's employment primarily on that property. He was repaying what in effect was borrowed from that which was already there. And which was used for marital purposes undisputedly. Your Honor, I argued that Ms. Lynch was leaving the marriage with a $42,000 asset. I argued that the principal pay down was clearly defined by stipulated facts. I don't think the clear and convincing evidence is an issue when we have a stipulation saying exactly what was paid down in the mortgage. And I argued in light of the debt that was being assumed by Patrick and in light of the fact that he had basically no house or comparable asset to the non-marital property that Karen was receiving, that he should get some greater percentage than 50% of the marital portion of his defined benefit pension. Written closing arguments were submitted in this case. They're part of the record. And my argument was that Patrick should receive his defined benefit pension or at least a greater share of his defined benefit pension than the 50%. Let me interject a hypothetical. They get married and he's got a $10,000 credit card bill because he buys collectibles. I know that's not the case, hypothetically. They take out the mortgage and pay marital expenses. They're treated as marital expenses because he brings the credit card to the marriage, she brings the house to the marriage. He gets to keep his collectibles. Maybe he sold them and used them for vacations or to buy a bass boat or whatever it is. Would he be entitled to compensation from the non-marital estate or to be viewed that as a contribution from the non-marital estate to something that he enjoyed during the marriage and it ought to be paid back dollar for dollar? I don't know if that's a very good hypothetical, but you see where I'm headed with it. If he gets to enjoy a new truck during the marriage but he only got to buy that new truck because of that original mortgage and then he enjoys it through the marriage and he sells it and later they buy two non-marital vehicles. How do you sort that out? You sort that out by the party who wants the contribution to the marital estate to be repaid. Trace that by clearly convincing evidence. Just telling me that that amount was paid down during the marriage is not the same thing as tracing the contributions to the marital estate. Your Honor, Judge Pacey was not given the evidence. I understand that and I'm not trying to bring in extraneous factors. They clearly are hypotheticals, but it is the party seeking contribution and you were effectively saying, look at all those contributions we made to the non-marital estate, we ought to get all the pension. No matter what phraseology you used, that was a theory. We helped you, now you don't get anything of ours. Your Honor, I guess in part that was a theory, but again, if you took out the contribution by clearing convincing evidence, the net value of that house was still $42,000. And that may seem like a small amount in the context of the divorces that we often see. It was a large amount to these two parties. There was nothing close to worth $42,000 other than pension assets in this marriage. The only tangible thing that anyone could leave with was a couple cars, which Patrick's was a loan on that car, and that house. That was all they had, and a bunch of credit card debt. What was the equity in the house on the day that they got married? Do we know that? Your Honor, I do not know the equity. Don't we need to know that? You keep saying she left the marriage with a $42,000 asset. Well, maybe it was a $60,000 asset at the time of the marriage. Would that make a difference? Your Honor, I'll give you the best explanation I can from the facts I have in the stipulation. The value of the property at the time of the divorce was $75,000, and $48,000 was paid down in principal mortgage over the first 15 years of that marriage. This wasn't a $60,000 net equity asset. There was still approximately $50,000 to pay down on an asset that was only worth $75,000 some 15 years later. Okay, so you're saying that evidence would suggest it was maybe worth $20,000 to $25,000 in equity at the time of the marriage? I think that evidence would suggest that at most, and I wish I could give you precise evidence. I can't as to what it was worth at the time of the marriage. But, Your Honor, I don't think this is a situation where the court ignored Wisniewski, ignored Hunt, ignored those formulas. I think this was a 503-D situation considering all the facts. What do I leave Karen with and what do I leave Patrick with? And I think Judge Pacey considered the fact that Karen was still employed. Patrick wasn't. That Karen had a very minimal debt load she was leaving the marriage with. Patrick had a heavy debt load he was leaving the marriage with. Karen had a $42,000 house she was leaving the marriage with. Patrick had to go find some place to rent. The financial affairs affidavit showed his rent cost was $600 a month, which was more than the mortgage payment that Karen was being left with on her house. Patrick had a car to pay off that wasn't included in this $32,000. That was all credit card debt that he took to reach that figure. Karen's car was paid off. I don't think the court can look at these assets one by one in a vacuum. In fact, there's a case I cited in my brief, I want to say the Steele case, that suggests you can't look at it that way. You've got to look at it as a whole. And I think when you look at it as a whole and look at the income effect it would have on the parties once this was done, this would have been unfair to Patrick had Karen got 50% of the marital portion of the assets. It would have left him in a terrible cash flow situation as far as his housing, credit card, and vehicle debt in relation to his expenses. He's in a terrible situation anyway, even receiving this money, as is apparent from the stipulation. So, Your Honor, I think when the court looks at the 503D factors, then I do think a reasonable fact finder could have adopted the position of the trial court. And I think that's the standard here. We all could have done something different. I didn't know what the judge was going to do with what number, I hope it wasn't 50%. I didn't know it was going to be zero either. But I think the court had discretion and knew the value of the pension, knew the monthly benefit, and reached an amount in light of all the facts and circumstances. And I think that decision was reasonable in light of the case. Your Honor, are there any other questions? No, thank you. Rebuttal? Yes. A couple of things. When the court looks at the stipulated facts, Patrick's gross income is $3,935, and my client's gross monthly income is $2,833. So even if she were to get $550, and he was deducted the $500 from the $3,935, the parties were approximately equal monthly cash flow. The other thing is what counsel fails to state is that, yes, he has this debt load, but he got a liquid asset that could be liquidated to pay off that debt, and that's why he got that asset. Moreover, Judge, my client had approximately $7,000 of debt that she took on herself. And so from that perspective, What's the liquid asset he got? The annuity. Oh, okay. He got an annuity which he could cash in. And so I think they're basically financially on the same page if she were to have gotten the 50% of the annuity. Right now, with not getting any of the defined benefit plan, without getting any of that, his income is $3,935 and hers is $2,800. So in essence, he by that fact has more income to pay for his living expenses and the like. Except that her living expenses will continue to contribute toward the equity that she's already built up in the non-marital asset. So it's not exactly a whoosh. I mean, she's leaving with an asset that probably got some benefit from the marital estate, whether it got a full contribution or whether it got her right to get part of his pension. There's the likelihood that her asset was benefited during the course of the marriage. At least the possibility. Right. And I understand that. I think the one thing is when you look at the number at $66,000, that number didn't include the fact that she, from her non-marital estate, paid off marital debt. And that's what, in my brief, I showed you the differential, which means that the only amount the state could have been, the marital estate could have been reimbursed from the non-marital estate was $36,000. And that's over a 20-year period of time that they lived in the residence. And I said that the court finds that there should be some reimbursement. You can also look at the fact that he received the entire pension from August 2012 to now. And in terms of Petitioner's argument in terms of valuation of the pension, the valuation isn't the marital portion $1,035. The value of the pension in a total offset method would have had to have been determined through actuarial evidence, whereas in the Mazowski formula, you do know what the marital portion is, which is $535. And like I said, the court felt that there wasn't adequate reimbursement that the court could have awarded a disproportionate share. But I don't even think you get to that point, especially in the light of the fact that the trial court did not find an amount that the marital estate should be reimbursed by from the non-marital amount. And moreover, that half would also go to my client. So half of that amount is attributed, he would get half that amount in the assets, and then my client would get the other half. So it's not all coming from the marital, from his client's side. It's also coming from my client's side. Thank you, judges. Thank you, counsel. Thank you. I take the matter under advice.